Number of cases submitted on the briefs. I'm not going to read through all of those since they have been docketed and they are recorded. The case for argument this morning is Jose Arce-Martinez v. Garland, and you may proceed. Honors, and may it please the court. Ryan Hamilton on behalf of the petitioners, Jose Arce-Martinez, along with his U.S. citizen wife, Alondra, and they now have four U.S. citizen children, your honors. Congratulations. Yeah. Thank you so much. So a bit of a change since this case was submitted on the briefs. They are pleased to report their newest child who is nine months old. Your honors, this is a situation in which my clients have sought cancellation of removal because they are very concerned about the breakup of an American family. Mr. Jose Arce-Martinez has been in the United States since he was eight years old. And by that, the U.S. is really the only country that he knows. But the hardship to this family and for the court's analysis, it's much more important because, um. Could you please, I'm sorry to interrupt. Can you please point us to the language in the BIA, in the BIA order, as well as in the IJ order that shows that the agency applied a categorical rule? Um, your honor, I don't believe that there is, there's, there's certainly no express language in either of those. Um, what, what it appears and my reading of that, your honors, is that the, um, sort of the, the amount of language given, um, to the waiver, um, or the alternative means of immigrating, uh, appears to be a roughly equal to the consideration of the hardship. And in fact, it seems to be, um, uh, uh, and that makes it all the more troublesome in view of the fact that the, um, alternative means of immigrating, um, was not actually available to my clients in this instance. But if, if the agency gave, in your view, too much weight to that alternative means factor, would that be reviewable? It would, your honors. Um, it would under this court's precedent and the, um, Arteaga decision, um, which would say that it's, it constitutes reversible error where a, um, uh, a categorical rule, um, showing that, uh, an alternative means of immigrating necessarily undercuts the application for cancellation of removal. But, but didn't Judge Reinhart say in Arteaga that in fact, um, the, uh, the possibility of an alternative way into the United States could in fact be a negative factor, uh, in the ultimate determination provided that, um, the BIA was considering facts? He did. And that's, uh, that's an important point, your honors. Um, and I, and I think that, um, it's certainly a, a balance. Um, here, our position is that, um, there's, there's two problems. One, the, um, there's, there's too much consideration of the alternative means to immigrate. Um, and then that error is compounded by the fact that that alternative means is not, was not available at the time. It changed their hardship analysis completely. Um, the hardship analysis that the judge believed was going to occur that, um, the petitioner, uh, Mr. Martinez, um, was expected to be separated from his family was for possibly a few weeks, it turns out that separation is going to be at least two to three years. Uh, just a completely different scenario. And so we would say, even, um, although the, the court may consider the alternative means to immigrate when the court does so and makes, um, you know, in our view, a very significant mistake on that ground, that should also be grounds for remand. I'm, the problem, I understand your argument, but it seems to me the amount of ink spilled is really not a foundational question. I mean, the BIA, of course, addresses the, um, educational and medical hardship and cites to the, uh, briefing and the IJ. And in talking about the alternatives, they're really just laying out the, what happened there with respect to being the beneficiary of whether you'd be a beneficiary of this immediate, um, spouse petition. So it's more of a chronology. It's not really a decision. It's leading up to this is where we are and this is what was considered. So I'm having some trouble because it seems to me that the only way that we could grant your petition would be to find that that recitation is legal error. Do you agree with that in terms of the standard of review? I do agree that, um, this court would need to find legal error and I respectfully disagree though, that, um, the analysis or the recitation of the alternative means to emigrate is, is just part of the chronology. I think a reading of that shows that it was part and parcel of their hardship analysis, and I think that, um, it played so much into the court's hardship analysis, the court thought that, um, my client, um, was only going to be separated from his family for a very brief amount of time that, um, it completely changed the focus of that hardship analysis. And so that's, that's where I would respectfully disagree with that. Uh, we certainly do believe that it was legal error and we believe, um, wholeheartedly that this court does have the power to review and correct that legal error. So we'd ask. How, how is that legal error if the agency got wrong, the duration or the location where the petitioner would have to wait for his visa and waiver processing? Isn't that a factual finding? How is that a legal error? It's our position that that, that they were applying the very improper legal standard in Arteaga, uh, that this court disapproved of, um, that it's, that noting in there or, or it changed the entire focus of the hardship analysis by concluding that, um, Mr. Ars Martinez was only going to have to go abroad for a very limited amount of time. And thus, um, I think a fair reading of that is that they did not, uh, give nearly as detailed an analysis of the hardship. There, there seemed to be a pretty significant dispute between you and, uh, the government's perspective on what would happen in this visa process. I mean, your argument is that he could not submit, uh, the visa application until all of the removal proceedings, uh, have been completed. Their, their position is you should file it. Uh, in fact, it could be ruled upon in advance. He might have to go to Mexico for a very short period of time and, uh, then be released back into the United States with a 601A waiver, uh, and then you say that it's two years or more. Um, this is, uh, this is if you're on different planets here. I appreciate that, uh, this is complex law, but what's right? What's right? Is he going to go to Mexico for just a short period of time or is he going to be staying for two years? And what's your authority for saying that he'd be there for two years? Yeah, uh, your honor, the removal proceedings must be closed for him to seek that relief under the I-601A waiver. And, um, to do so, he must be abroad, uh, when he does that. Um, the practical reality is he will be over there for a very lengthy amount of time. Um, I, you know, I have, uh, I certainly disagree respectfully with my colleague, but there must be administrative closure, um, for my clients to seek this relief. And I would point, there's a brief, uh, a case in our brief that is Beltran v. Trejo. Can I say, I'm a little bit unclear. When I read Arteaga de Alvarez, it seems that the court had the most problem with the BIA's language, quote, long held that the availability of an alternative means of lawfully immigrating to the United States undercuts a claim of exceptional and extremely unusual hardship. When you look at the agency decisions in this case, I don't see any language necessarily that indicates such a longstanding preexisting categorical rule that might apply across cases. It seems like they perhaps incorrectly, erroneously, made an individual analysis of this petitioner's duration, location, the interplay of the visa waiver, the visa processing and the waiver processing, it does seem like they made an individualized inquiry. What's your response to that? Your Honor, I would certainly concede that I don't see that language of long held, any of those in there. They certainly did not use that language. The impact, and I think the grovelman of their analysis was essentially the same without using that language though. Their focus on this alternative means to immigrate in which they at least believed that my client would have to be separated from his family for such a short amount of time, completely changed the focus of their hardship analysis. Did I answer your question, Your Honor? I guess I'm just unclear how Arteaga stands for the proposition that if the agency gives too much weight to this alternative means factor, that's legal error. I don't quite see how the case stands for that proposition, which I think is your argument. Isn't that your argument that the BIA gave too much emphasis on this alternative means factor? It is. It is our argument. Not only that, they gave too much emphasis and all the while making an error about what the alternative means was. And I think that's another basis is that where the BIA focuses so much on the alternative means to immigrate and in this particular instance is incorrect about it, that would constitute legal error. And do you have support for that other than Arteaga? I do not. Arteaga is candidly our principal support for that. But what language would the agency have to have used to satisfy you? I don't know that there are any magic words. I think that if the agency made clear that the alternative means of immigrating was one of several factors, or if the agency was clear that this is not the I believe would satisfy Arteaga. So then when the BIA uses what are magic words, considering the totality of the circumstances, why isn't that the combination of the preceding two paragraphs and a judgment that really is unreviewable in that regard? I think that is a fair point, Your Honor. I think that it's going to be on a case-by-case basis and, you know, without a bright line rule, every one of these would require careful consideration in this particular instance. Again, it's our reading and it's our position that the court focused almost entirely on the fact of this alternative means to immigrate, and it's so skewed the hardship analysis. And unfortunately, and by no means by trying to pick on the lower court or pick on the BIA, but I think that they were just mistaken and it completely changed their hardship analysis. Thank you. Thank you, Your Honor. Turn to the government. You're down to very few seconds, but I'll give you a little time for rebuttal. I sure appreciate that. Thank you. Good morning, Your Honors. May it please the court, Andrew Nsinga on behalf of the Attorney General. Counsel's responses to Judge Koh's questions essentially answer everything this court needs to know. He concedes that there is no express language that suggests the board ever said that there's a necessary undercutting or any categorical rule. The only way petitioner reaches his reading of the agency's decisions is largely by ignoring the court's broad discussion of it. Petitioner keeps saying that the agency focused on it, but in the board decision, it's one sentence. And as Judge McKeown pointed out, the board noted that the standard is considering the totality of the circumstances. But let's look at the language here. For the IJ, the IJ said the court would point out that such separation would not necessarily be permanent, which sort of implies that any separation that's less than permanent could never qualify as an exceptional and extremely unusual hardship. And then the BIA sort of doubles down on that and says, we agree with the States would not necessarily be permanent. So they do seem to be implying a categorical rule that unless the separation is permanent, it can never, um, it would, it would always undercut this finding of exceptional and extremely unusual hardship. No, Your Honor. Why not? The agency is not implying anything. The agency would announce rules. If it wanted to announce a categorical rule, it could. That's the attorney general's authority. It's simply considering, as Artiaga said, it could, a factor. Why would the agency talk about the other facts of the case? Why would the agency then cite the totality of circumstances, uh, test? If it simply wanted to say, well, yo, you have a possibility of returning, we're done. It could have said that, I guess. It didn't. So to read the agency's decision would be largely, uh, to ignore everything else the agency talked about. Well, what about where the IJ says the court is not able to find that this case presents a showing of exceptional and extremely unusual hardship where the respondent clearly has an alternative opportunity for lawful immigration. Right. Your Honor, that would be reading the conclusion out of context. You have to read the entire agency decision. It essentially is though someone comes to this court and cites one sentence out of a court decision and says, well, that's what you meant. The court understands that this decisions have greater complexity than one sentence. And these agency decisions have greater complexity, more than one sentence. What is the government's response to Mr. Hamilton's argument that the premises underlying this alternative course of are faulty because of the time lag that it actually takes to be able to come back into the United States? Largely, that's a manufactured by the argument of the council. Petitioner's council said that someone said it would be a few weeks. No one ever said that, Your Honor. These visa waivers and visa application that are processed by both citizenship and immigration services and then state department are complicated and they have changed over time. No one's ever said this was going to be a few weeks. What everyone has said, including petitioner before this court said that's not necessarily permanent. And we understand that as a common sense concept, that a permanent hardship would be relatively more severe. Does it answer the question necessarily? No. And the agency never said it necessarily answered it. Is there anything in the record as to the expected timeframe beyond it being not being permanent? No. The visa waiver process has changed over time and it can be fairly complicated. It can be short. It can take longer. I think all immigration practitioners have seen 601A and 601 waivers. It takes some time. And a lot of that depends on whether the person actually, well, files it, which petitioner never did when given the opportunity to file it. So I, no one has made any finding about a definitive timeline. We don't know. So does the petitioner actually have to be in Mexico before he files the visa? Because there seems to be a dispute over that. You, you suggest that he can file it at any time. He can begin the process of the 601 waiver, 601A waiver. The other side says, no, he has to wait until he's in Mexico. And that begins a much longer process. Is there, who is accurate here? Well, petitioner is definitively wrong if he's suggesting that you have to be in Mexico to file the 601A waiver. The entire purpose of the 601 waiver is so the person does not have to go to the country. So why would we have a waiver that is now somehow contrary to its entire purpose? What has to be done under current CIS process is you can't be in administrative removal proceedings. Now we all have cases and in the past, you could file the 601 waiver while you were in administrative removal proceedings, but petitioner, that is why the administrator really closed the proceedings several years so that it could apply for 601A. So again, petitioner's argument is or suggestion is contrary to his own argument to the agency that please administratively close my case so that while I'm in the United States, I can apply for the 601 waiver. So you can apply for the 601 waiver. Now there is, I don't think we necessarily need to dive in the complexity of the, how that application goes to get there, have a request for readmission, especially when someone was not admitted to the United States, that has to go through CIS and state department, and then eventually you would be called to state department for a consular interview in Mexico. So eventually, yes, because that is the statutory law, he must go to Mexico for the interview. But can you file the 601A and all the applications in advance? Absolutely. That's the point of them. How long will it take? We don't definitively know, but what everyone knows is. I have a question about the court's jurisdiction. So what, what basically you're saying is that the BIA made a determination based upon totality of circumstances. That's all of the individual circumstances that the petitioner applied together with the fact that there is a negative inference from the fact that he might be able to come back with a 601 waiver. So you may be mistaken, at least in regard to the terms of that 601 waiver. It may take two years. It may take longer than that. My question is because that is a consideration for the BIA, that negative factor, they consider that in deciding whether to approve his petition on COR. Whether the court in fact has any jurisdiction to even consider that impact of a delay. That's a factor. The BIA is considering that factor. It seems to me under Patel that maybe the court doesn't have jurisdiction to evaluate factors that the BIA considers. And my question is, is there jurisdiction for us even to talk about whether or not you made a mistake in regard to how long they were going to be in Mexico? He was going to be in Mexico. You follow that? That's a long question, right? I'm not so sure that was a question or it was just a, I don't know. It was a summary of fact, but can you, and the question is whether we should even be talking about this. Under the terms of Arciaga, it's a legal error. The problem is in this case, it's a legal error in search of any factual support. Now, if we're talking about purely the weight of evidence and petitioners kept saying too much weight, that's not even Patel. That's Romero Torres and Mendez Castro. That's his cases, that's his court's case law for years. The weight of evidence to be applied, that's not for this court to decide. Oh, wait, I'm sorry. So are you arguing that your position is that if the agency got it wrong as to the duration and location of the waiver processing, that is a legal question that is subject to review by the courts? Is that your position? No, Your Honor. I thought that's what you just said. You said it is a legal error under Arciaga.  That's a claim of legal error. I'm sorry, did you say that? Again, that would be a claim of legal error under Arciaga. But again, the problem of these concepts of duration and place, again, there's no such findings. Wait, why is that a legal error under Arciaga? Under Arciaga, the legal error is if you use and apply a categorical rule. Unless you think Arciaga stands for other legal errors. What other legal errors does Arciaga stand for other than the application of a categorical rule? Well, Your Honor, exactly. If the suggestion is that there's a categorical rule because of, as I understand Your Honor's question, the duration of place, then that would be a quote unquote legal error under Arciaga. Or at least an allegation of a legal error, except it's one unsupported. Now, if we are talking about getting it wrong, again, then yes, under Patel, that would be unreviewable. But again, the court in this case doesn't really need to go that deep into it because petitioners can see that there's no express language suggesting the board applied a categorical rule. What you're basically saying is if the BIA is considering the 601 waiver application to the weight of the totality of circumstances, then the court doesn't have jurisdiction to consider that, to overrule that. It's only the legality. So it goes to the full extent of the Arciaga decision before the court can actually get involved in analyzing the legality of this issue. Is that right? I mean, under Patel, but again, under Romero-Torres and Mendez-Castro, you actually have to have a legal error. And weight of evidence is simply not a legal error under Romero-Torres and Mendez-Castro. Petitioner, despite now talking about too much weight, has not suggested, not presented in any case that says that the weight of evidence and a hardship determination is a legal matter. So, I mean, just to be clear, because we throw these words around about jurisdiction and weight, is that as a general proposition, we do not have a jurisdiction to consider hardship determinations. And I think both counsel agree with that. However, as I understand the framing of the issue here, the legal issue is whether in contravention of Arciaga that the description in the opinion rises, or is tantamount to the level of being a definitive factor. And that's the legal issue that we have to decide, which is a fairly narrow issue as I see it. Do you agree with that? Characterization? Yeah, I think it's a fairly narrow. Is there a categorical rule? Petitioner can see there is no categorical finding in this case. The necessary undercuts is the example the court gives in Arciaga don't exist here. Essentially is, well, let's say someone's going to die and the qualifying relative is going to die in one year. The fact that the person can come back in two years doesn't lessen hardship. That's a fair example. What if, whether the agency applied a categorical rule is unclear or ambiguous? What do we do in that instance? And is the agency entitled to any deference? It's entitled to a presumption of regularity, but your honor doesn't need it. The board explicitly said it considered the totality of circumstances. So we'd have to frankly ignore the board statement of its own test. But yeah, so again, petitioner argument is a, is a so-called legal argument in search of facts. There's no evidence that, that this fits either categorical rule or that there's some sort of immediate permanent loss that might be impacted by the fact that petitioner can eventually potentially return to something. You said earlier, you said you can't find legal error based on one sentence. But isn't that what Arteaga did? Arteaga had very similar facts. The agency went through the health of the spouse and kids, went through the, whether the kids spoke Spanish or not, one child needed speech therapy. It did all that same analysis, but then had that one sentence from the BIA saying that they have long held that the availability of alternative means undercuts a claim of hardship in cancellation proceedings. So isn't that what they did? They say there's this one sentence from which we can infer a categorical rule was applied. The court has large, the Arteaga change undercut to mean necessarily undercut. So in that panel's mind, that turned into some sort of legal statement. But again, there is no such legal statement. And to read it in this case would be to read that one sentence out of context and ignore everything else the agency said. And that doesn't manufacture legal error. Thank you. But we'd ask that the court deny and dismiss the petition. Would you put a minute on the clock for rebuttal, please? Mr. Hamilton. You have to unmute yourself. Thank you for that. You would think I'd be used to that by now. We're all in the same boat. We do it all the time. Thank you, your honors. Your honors, I do think that as you quite rightly pointed out, this case is very similar to the Arteaga decision and courts all the time find that tests have been met or that legal errors occurred without finding any magic words. We don't believe that any magic words are necessary. That the fact that the opinion does not necessarily use the language necessarily undercuts the practical impact is absolutely the same. Can I ask you a question? What if we find that whether a catechol rule was applied here is at best ambiguous or unclear? Do you still win if it's at best ambiguous or unclear? And is the agency owed any deference? I don't believe the agency is owed any deference because it's a legal question that this court can determine de novo. Your honor, I see that my time has expired. I would be happy to answer more questions if you would like. I think we have your arguments in mind, both counsel and also from the briefing. So we very much appreciate your arguments this morning. The case just argued of Jose Artes Martinez versus Garland is submitted and we're adjourned for the morning. Thank you. All rise.
judges: McKEOWN, KOH, Sessions